JOURNAL ENTRY AND OPINION
Defendant-Appellant Precision Cut, Inc. (Precision) and Defendant-Appellant Robert Gregorek (Gregorek) appeal from the order of the trial court granting judgment in favor of Plaintiff-Appellee Imperial Construction, Inc. (Imperial) in Imperial's action for recovery under a subcontractor agreement. For the reasons set forth below, we affirm.
On August 13, 1999, Imperial filed suit against Precision and Gregorek for fraud and breach of contract, seeking recovery of compensation due under an oral subcontractor agreement. Imperial alleged that it skillfully completed carpentry work pursuant to the agreement and was owed payment. Additionally, Imperial alleged that Gregorek fraudulently induced Imperial to forgo its statutory lien rights after Gregorek assured Imperial that compensation would be duly paid. Gregorek denied liability and asserted that Imperial's workmanship on the project was faulty, and had to be completed by another subcontractor. The matter proceeded to a bench trial on April 6, 2000.
Gregorek formed Precision Cut, Inc. in 1990, a company specializing in general carpentry work. Gregorek testified that he is the president and operations director of the corporation and owns all of the stock in the company. Gregorek also testified that he is and always has been the sole employee of the corporation. At the time of the company's inception, Gregorek elected corporate officers, but has not elected officers for over 10 years. Gregorek testified that Precision holds annual meetings of its officers and files corporate tax returns.
In May of 1999, Gregorek's company, Precision hired Imperial as a subcontractor to complete rough carpentry work on a project for a builder at a house on sub lot 44 in Seven Hills. Imperial provided three workers to assist Precision in framing the home. Imperial's employees worked on the job site a total of 168 hours between May 17, 1999 and May 28, 1999 framing the home under the direct supervision of Dennis Hickey, a former subcontractor of Precision. Mr. Hickey instructed Imperial's workers on what work to do at the site, based on his reading of the blueprint. Accordingly, Mr. Hickey then laid out the walls and instructed all workers on the job site how to assemble everything.
Gregorek personally spent time working at the job site each day but was not present during all working hours. Gregorek operated the crane that raised the particular wall in question.
The Imperial employees completed the rough carpentry work. Thereafter, Imperial invoiced Gregorek in the amount of $4,200 for services rendered, in accordance with their subcontractor agreement. Gregorek issued a check in satisfaction of this invoice. Imperial deposited the check and was later notified of a stop payment order on the check. Imperial contacted Gregorek at which time Gregorek promised he would make good on the check or reissue another check.
Gregorek contends that he issued the stop payment order because of alleged defects in Imperial's work. Gregorek did not produce any evidence or testimony of these alleged defects.
On April 6, 2000 the trial court held Gregorek personally liable on the contract and made, among others, the following findings of fact and conclusions of law:
* * *
 13. Defendant failed to produce an itemization of the alleged defects to the Plaintiff.
 14. Defendant failed to provide Plaintiff with time to correct any alleged defects.
 15. Defendant did not ask Plaintiff to return to the job site to fix any alleged defects.
 16. Defendant failed to produce any witnesses to testify to any alleged defects, other than himself.
* * *
 18. After he stopped payment on the check, Defendant told Plaintiff that he would either make good on that check or reissue a new check in satisfaction for [sic] the debt.
 19. In reliance on the Defendant's promise to make good on the debt, Plaintiff did not file a Notice of Furnishing within the time period allowed by statute.
* * *
Thereafter, the trial court awarded $4,850.50 plus costs. Precision and Gregorek appeal and assert three assignments of error.
 I.
In his first assignment of error, Gregorek asserts:
 THE COURT ERRED IN FAILING TO DISMISS PLAINTIFF'S CASE AGAINST GREGOREK, PERSONALLY, AT THE CLOSE OF PLAINTIFF'S CASE.
This matter was tried before a judge and not a jury, therefore a motion for a directed verdict was improper, as motions for a directed verdict under Civ.R. 50 apply only in actions tried to a jury, rather than to the court. Altimari v. Campbell (1978), 56 Ohio App.2d 253, 256,382 N.E.2d 1187; Johnson v. Tansky Sawmill Toyota, Inc. (1994),95 Ohio App.3d 164, 167, 642 N.E.2d 9. In such a case, the motion for directed verdict is deemed to be a motion to dismiss pursuant to Civ.R. 41(B)(2). Altimari, supra.
Pursuant to Civ.R. 41(B)(2):
 After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, * * *, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all of the evidence. [Emphasis added].
A trial court's deferral of judgment will not be set aside unless it is shown to be an abuse of discretion. KP Adjusters, Inc. v. Prime Commercial Credit, Inc., (Mar. 4, 1999), Cuyahoga County App. No. 73931, unreported, citing Janell, Inc. v. Woods (1980), 70 Ohio App.2d 216,217, 24 O.O.3d 266, 435 N.E.2d 1138, 1139. Abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Tracy v. Merrell Dow Pharmaceuticals, Inc. (1991), 58 Ohio St.3d 147, citing Berk v. Matthews (1990), 53 Ohio St.3d 161, 169; State v. Adams (1980),62 Ohio St.2d 151, 157, Steiner v. Custer (1940), 137 Ohio St. 448, 19 O.O. 148, 31 N.E.2d 855.
In the case sub judice, the trial court did not abuse its discretion in deferring judgment against the plaintiff at the close of plaintiff's case. After Gregorek made his motion upon the close of plaintiff Imperial's case, the plaintiff indicated to the judge in his response that he intended to develop more fully testimony regarding Gregorek's personal liability, stating In regards [sic] to developing the corporate entity, I planned on doing that on cross after Mr. Vitantonio put him on the stand[.]* * * In light of his statement, the trial judge's deferral of judgment in anticipation of additional evidence regarding Gregorek's liability was neither arbitrary, unreasonable nor unconscionable. Therefore, we find no merit in Gregorek's first assignment of error.
 II.
In his second assignment of error, Gregorek asserts:
 THE TRIAL COURT ERRED IN GRANTING JUDGMENT AGAINST DEFENDANT GREGOREK PERSONALLY, SINCE THE PLAINTIFF FAILED TO ESTABLISH THE ELEMENTS NECESSARY TO PIERCE THE CORPORATE VEIL.
It is well settled that where competent and credible evidence exists to support the findings and conclusions of the trial court, a reviewing court must afford great deference to those findings and conclusions. An appellate court must not substitute its judgment for the judgment of the trial court. Seasons Coal v. Cleveland (1984), 10 Ohio St.3d 77, 80, 10 OBR 4089, 410, 461 N.E.2d 1273, 1276; Cohen v. Lamko, Inc. (1984),10 Ohio St.3d 167, 462 N.E.2d 407. In this case, we find that competent and credible evidence exists to support the findings of fact and conclusions of law by the trial court that held Gregorek personally liable for the corporation.
Generally, an individual officer or shareholder will not be held liable for the acts or debts of a corporation. Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274, 287,617 N.E.2d 1075. However, an exception exists where, upon piercing the corporate veil, it appears that the corporate is merely the alter ego of the individual sought to be held liable. Id. In Belvedere, the Ohio Supreme Court stated the requirements for piercing the corporate veil:
 The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.
In this case, Gregorek testified that he is and always has been the sole shareholder, president and operations director of Precision Cut, Inc. Since the corporation's inception over ten years ago, Gregorek has been the sole employee of Precision Cut. While Precision Cut has annual meetings, the corporation has not elected any directors or appointed any officers since the corporation's inception. Clearly, all corporate decisions were made by Gregorek; it is not controverted that Gregorek had absolute, complete and final authority over Precision Cut. These facts support the trial court's conclusion that the first prong of the Belvedere test was satisfied.
Gregorek fraudulently used his control over the corporation to induce Imperial not to file a notice of furnishing to secure its lien rights after Imperial was notified of the stop payment order on the check. The trial court, in its findings of fact and conclusions of law, stated [Gregorek] is the voice of the corporation. As such, he told Plaintiff that he would make good on the check. As a result, Imperial relied on Gregorek's assurance and subsequently did not file a notice of furnishing to secure his lien rights. This fraudulent inducement on the part of Gregorek satisfies the second prong of the Belvedere test.
Lastly, Imperial suffered unjust loss of $4,200 in compensation due as a result of Gregorek's assurances.
All three prongs of the Belvedere test were supported by competent credible evidence. Therefore, we find that the trial court did not err in piercing the corporate veil of Precision Cut and holding Gregorek personally liable.
 III.
In his third assignment of error, Gregorek asserts:
 THE TRIAL COURT ERRED IN AWARDING ATTORNEY FEES AGAINST DEFENDANTS.
It is well settled that the appellant has the burden of demonstrating an error by reference to matters made part of the record in the court of appeals. Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 15 Ohio Op.3d 218, 400 N.E.2d 384; App.R. 9(B). When the alleged error is that the trial court judgment was against the manifest weight of the evidence or unsupported by the evidence, the appellant must include in the record all portions of the transcript relevant to the contested issues. App.R. 9(B); Ostrander v. Parker-Fallis Insulation Co. (1972), 29 Ohio St.2d 72, 58 Ohio Op.2d 117,278 N.E.2d 363. In the absence of a complete transcript, an appellate court reviewing a lower court's judgment presumes regularity of the proceedings below. Knapp, supra.
In the case sub judice, Gregorek failed to produce a transcript of the post trial hearing setting forth the basis for and amount of attorney fees. In the absence of this transcript, this court must presume regularity. We therefore affirm the trial court's award of attorney fees.
It is ordered that appellee recover of appellants its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J., CONCURS. ANNE L. KILBANE, P.J., CONCURS IN JUDGMENT ONLY (SEE ATTACHED CONCURRING OPINION)